Henry McCoy WINGO, Jr., Appellant,

v.

Dr. P. J. CICCONE, Director, United States Medical Center for Federal Prisoners, Springfield, Missouri, Appellee.

No. 74–1619.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 14, 1974.

Decided Dec. 5, 1974.

R. Steven Brown, Asst. Federal Public Defender, Kansas City, Mo., for appellant.

Frederick Griffin, Asst. U. S. Atty., Kansas City, Mo., for appellee.

Before GIBSON, Chief Judge, CLARK, Associate Justice, Retired,* and WEBSTER, Circuit Judge.

GIBSON, Chief Judge.

Petitioner Henry McCoy Wingo, Jr. appeals from an order of the District Court[1] partially granting Wingo's petition for a writ of habeas corpus that challenged the conditions of his confinement at the United States Medical Center for Federal Prisoners, Springfield, Missouri, and claimed that he is entitled to have three states enjoined from prosecuting him on numerous felony charges. Petitioner is presently serving a five-year prison sentence for interstate transportation of forged securities.[2] Numerous detainers have been lodged against him by the states of Arkansas, Louisiana, and Texas arising from untried state criminal charges.[3] On April 23, 1974, four months after unsuccessfully requesting the states to proceed promptly against him on the untried charges, petitioner filed the instant petition challenging the adverse effects which the detainers were causing upon his federal confinement. Petitioner asserted that the states had so violated his Sixth and Fourteenth Amendment right to speedy trial that any prospective state convictions on the pending charges would be invalid. His complaint was that the detainers lodged against him were inhibiting his chances of obtaining early parole, minimum custody status, or transfer to rehabilitation or community treatment programs. He demanded that the court first order Respondent Ciccone to remove the allegedly unlawful detainers from his prison records; second, that it restrain federal authorities from honoring the state detainers, including prohibiting them from transmitting notice to the states as to the date of petitioner's eventual release; and finally, that it enjoin the states themselves from prosecuting the pending charges.

Pursuant to Local District Court Rule then in effect, the case was referred with several others to the United States Magistrate for a consolidated hearing and recommendations. On June 19, 1974, the District Court overruled petitioners' exceptions to the Magistrate's report, adopted the Magistrate's recommendations in part, and, without a hearing, granted in part the consolidated petitioners' writs of habeas corpus. The court ordered Respondent Ciccone to give prompt formal notice to each inmate as to the source and contents of any detainers lodged against him; to advise each inmate of his right to request each detainer-lodging authority, in writing (delivered to Respondent within 15 days of Respondent's notice to the inmate), to speedily resolve the charges underlying each detainer; to serve each such motion on the appropriate detainer-lodging authority within three days of the inmate's request; and to notify the detainer-lodging authority additionally that if the inmate

---

* Associate Justice Tom C. Clark, United States Supreme Court, Retired, sitting by designation.

1. The Honorable William H. Becker, Chief Judge, United States District Court for the Western District of Missouri.

2. 18 U.S.C. § 2314. The sentence of five years in prison to be followed by five years probation was imposed October 19, 1973, by the United States District Court for the Western District of Louisiana.

3. In October, 1973, when petitioner was sentenced by the federal court, apparently as many as 25 state charges were outstanding against him arising from his alleged passing of worthless checks. The charges were reduced in number to 15 at the time of the District Court's order and to 9 by the time of oral argument in this court, November 14, 1974.

On November 14, 1973, while incarcerated in the Federal Correctional Institution at Texarkana, Texas, before his transfer to Springfield, Missouri, petitioner mailed *pro se* motions for speedy trial to each of the state jurisdictions which had requested a detainer.

is not brought to trial within 180 days, the detainer is to be removed "except for notice purposes."[4] The court, however, denied further relief on the basis that Wingo's petition was limited to an attack on adverse conditions of his federal confinement and that the court was without power to disturb the state proceedings.[5]

On appeal, Wingo argues that the only relief appropriate to eliminate the alleged punitive consequences of his detainers is for the court to restrain federal officials from honoring the detainers in any manner, and to enjoin the states from continuing the delayed prosecutions. He argues that the federal district court embracing the place of confinement has jurisdiction concurrent with the district court in the prosecuting state to rule on constitutional claims underlying the state detainers.[6] Relief should be granted, he claims, because his right to speedy trial has been hopelessly violated by the states' failure to make "diligent, good faith effort[s]" to try him promptly.[7] He argues further that "practical" adverse effects on his confinement will continue despite the court's order that, absent prompt resolution of the state charges, the detainers are to be removed. In sum, petitioner asks that we overrule our acknowledgement in Cooper v. Lockhart, 489 F.2d 308, 317 n. 16 (8th Cir. 1973),

that the custodial authority may notify a detainer-requesting authority of the inmate's date of release even after the custodian has carried out a court-ordered "removal" of the detainer.[8]

■ In reply, Respondent concedes, and we agree, that the District Court properly granted what relief it did by applying the principles of Cooper v. Lockhart, *supra,* to this new setting, involving state trial rather than parole revocation detainers, and federal rather than state custody. Mattingly v. Ciccone, 503 F.2d 502 (8th Cir. 1974). In *Cooper, supra,* 489 F.2d at 317, we ordered that, absent prompt action by the detainer-requesting state leading to a parole revocation hearing, the custodial state was to provide the detained "prisoner with the same opportunities given the other prisoners not subject to a detainer." (footnote omitted). In the instant case that is undoubtedly what the District Court implied in substance when it ordered Respondent to remove the detainers absent prompt action by the states. Therefore, if it is necessary for Respondent to remove the detainers pursuant to the court's order, no so-called adverse "practical" effects will remain on the inmates' conditions of confinement. Petitioner Wingo's conjectures that punitive effects will remain are wholly unsubstantiated.[9]

4. Only 90 days were granted to the states before removal of detainers lodged against the other three consolidated petitioners, Calvin, Fair, and Henley. They are not parties to this appeal. The court, however, acknowledged that necessary and reasonable continuances could, of course, be granted by appropriate courts and that they would toll the waiting period. *See also* Interstate Agreement on Detainers Act, 18 U.S.C.App. § 2, art. III(a).

5. Having rejected the Magistrate's proposal that the case be handled as a class action including all other Medical Center inmates subject to state detainers, the court, as an alternative, requested Respondent to prepare a policy statement, applicable only to the Springfield Medical Center, providing for a uniform system of comparable notice and removal of adverse effects that detainers might have on confinement.

6. Relying on Braden v. 30th Jud. Cir. Ct. of Ky., 410 U.S. 484, 499 n. 15, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973).

7. Relying on Smith v. Hooey, 393 U.S. 374, 383, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969).

8. In *Cooper* we said:
 Assuming the [Michigan] detainer [placed against the Arkansas state prisoner, Williams] is removed, there is, of course, nothing in this opinion which would prevent the State of Arkansas from notifying the State of Michigan of Williams' release date.
 Cooper v. Lockhart, *supra* at 317 n. 16.

9. As Respondent notes in his brief, any evidence which Wingo may wish to present to substantiate his claims by way of future habeas petitions will not likely be barred by the rules governing dismissal of successive petitions. Sanders v. United States, 373 U.

The issue and the relief granted in the instant proceeding have properly been limited to elimination of the alleged punitive consequences which abide with petitioner in his day-to-day federal imprisonment as a result of the detainers lodged against him which are based on state criminal charges lying dormant pending his release. Recently, in Hoyt v. Ciccone, No. 74–1428 (8th Cir., filed November 13, 1974), we commented that a similar request for broad injunctive relief by a federal prisoner seeking to defeat his state parole revocation detainer extended far beyond the principles of Cooper v. Lockhart, *supra*. In the instant case, involving state trial detainers on untried criminal charges, the policy of federal cooperation with the states is even stronger.[10]

 In denying the broad relief requested by petitioner, the District Court was undoubtedly conscious of the need to prevent perversion of the habeas corpus jurisdiction "into 'a pretrial-motion forum for [federal] * * * prisoners.'" Here, petitioner seeks *no* less than "the derailment of a pending state proceeding by attempt[ing] to litigate [affirmative] constitutional defenses prematurely in federal court." Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 493, 93 S.Ct. 1123, 1129, 35 L.Ed.2d 443 (1973). Absent extraordinary circumstances, federal courts should not interfere with the states' pending judicial processes

prior to trial and conviction, even though the prisoner claims he is being held in violation of the Constitution. *Braden, supra* at 507–508, 93 S.Ct. 1123 (Rehnquist, J., dissenting); *cf.* Samuels v. Mackell, 401 U.S. 66, 69, 73, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971). Petitioner demands, in effect, that we now litigate his speedy trial claim and grant him the severe remedy of outright dismissal on the state charges. To do so in these circumstances, however, would be an unjustifiable federal interference with three states' judicial enforcement of their criminal laws. On the contrary, as this case is jurisdictionally presented, the District Court reached the outer limits of its power to coax prompt state resolution of the charges.[11]

 Petitioner's final challenge to the reasonableness of the 180 day waiting period granted the states by the court, prior to the removal of the detainers, is additionally without merit. In view of the complexities inherent in coordinating the many transfers of the prisoner which will no doubt be required for his prosecution on nine charges in three different states, six months is not unreasonable. *Cf.* Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Moreover, the period does not exceed the comparable time limits set out in the Interstate Agreement on Detainers Act, 18 U.S.C. App. § 2.

Judgment of the District Court is affirmed.

S. 1, 15–17, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963). However, as we recently held in Willis v. Ciccone, 506 F.2d 1011 (8th Cir., 1974), the habeas corpus jurisdiction is limited to claims involving the deprivation of substantial constitutional rights and requires prior exhaustion of remedies under prison grievance procedures. *Id.* at 1015, 1019.

10. *See* Interstate Agreement on Detainers Act, 18 U.S.C. App. § 5. *See also* S.Rep. No.1356, 91st Cong., 2d Sess., 3 U.S.Code Cong. & Admin.News, pp. 4864–4867 (1970). However, of the three states at issue here, apparently only Arkansas has joined in the agreement. Ark.Stat.Ann. § 43–3201 et seq. (Supp.1973).

11. Because Wingo's apparently unanswered mailing of requests to the detainer-lodging states, asking for speedy trial or dismissal

of the charges, cannot be deemed an exhaustion of his state remedies, there can be no doubt that the District Court properly denied further relief. We do not express judgment on the propriety of granting further relief—such as prohibiting notice or enjoining the state prosecutions—under more extreme circumstances. We *do*, however, caution against too liberally interpreting as exhaustion of state remedies a state appellate court's summary denial of a petitioner's *pro se* request for speedy trial or dismissal of criminal charges. The court in Kane v. State of Virginia, 419 F.2d 1369, 1373 (4th Cir. 1970), made such an interpretation when it vacated and remanded a Virginia district court's dismissal of a federal habeas corpus petition filed by a federal prisoner confined at Marion, Illinois, against whom a Virginia state trial detainer had been lodged.